UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ANGELA PENNOCK, and
BRIAN PENNOCK,

                    Plaintiffs,

     v.

JOHN MICHAEL DEAN, III, and
ALLIED SYSTEMS, LTD. (L.P.),

                    Defendants.

**DECISION
and
ORDER**

**06-CV-266S(F)**

---

APPEARANCES:       MISERENDINO, CELNIKER,
                          SEEGERT & ESTOFF, P.C.
                       Attorneys for Plaintiffs
                       PHILIP CELNIKER, of Counsel
                       964 Ellicott Square Building
                       Buffalo, New York 14203

                       LUSTIG & BROWN, LLP
                       Attorneys for Defendants
                       DAVID J. SLEIGHT, of Counsel
                       Centrepointe Corporate Park
                       400 Essjay Drive, Suite 200
                       Buffalo, New York 14221-8228

## **JURISDICTION**

This case was referred to the undersigned by Honorable William M. Skretny on May 23, 2006, for decision and order on non-dispositive motions. The matter is presently before the court on Plaintiffs' motion to remand[1] (Doc. No. 4), filed May 22,

---

[1] The undersigned considers a matter of remand as not dispositive as it resolves only the question of whether there is a proper basis for federal jurisdiction to support removal and does not reach a determination of either the merits of a plaintiff's claims or defendant's defenses or counterclaims. Following the decision on remand, the parties may prosecute such claims or defenses, including related dispositive motions, if any, in whichever court the decision may direct the action to proceed. *Wachovia Bank National Assoc. v. Deutsche Bank Trust Co.*, 397 F.Supp.2d 698 (W.D.N.C. Nov. 8, 2005); *Holt v. Tonawanda Coke Corp.*, 802 F.Supp. 866 (W.D.N.Y. 1991); *Acme Electric Corp. v. Sigma Instruments. Inc.*, 121 F.R.D. 26 (W.D.N.Y. 1988). *See Mahl Bros. Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 307

2006.

## **BACKGROUND and FACTS**[2]

Plaintiffs Angela Pennock ("Pennock") and her husband, Brian Pennock ("Mr. Pennock") (together, "Plaintiffs"), commenced this action in New York Supreme Court, Erie County ("New York Supreme Court"), on January 4, 2002, seeking to recover for personal injuries Pennock allegedly sustained as a result of an automobile accident on September 11, 2000, as well as a loss of consortium claim on behalf of Mr. Pennock ("the personal injury action"). Plaintiffs specifically allege that on September 11, 2000, a truck owned by Defendant Allied Systems, Ltd. (L.P.) ("Allied"), and driven by Defendant John Michael Deal, III ("Deal") (together, "Defendants"), collided with a vehicle driven by Pennock at the intersection of Transit Road and Rehm Road in the Town of Lancaster, New York, causing Pennock severe injuries, for which Pennock seeks monetary damages in the amount of $ 500,000, and based on which Mr. Pennock asserts his derivative loss of consortium claim for $100,000. Defendants' answer was filed in New York Supreme Court on April 23, 2002, and an amended answer was filed on June 20, 2003. Although Allied maintains its principal place of business in Georgia, and Deal is a resident of Michigan, and the jurisdictional threshold for diversity jurisdiction has been met based on the pleadings, Defendants did not

---

F.Supp.2d 474 478 (W.D.N.Y. 2004) (Arcara, C.J.) (denying under 28 U.S.C. § 636(b)(1)(A), plaintiff's objections to undersigned's decision denying motion to remand as not "clearly erroneous or contrary to law."). *Compare In re U.S. Healthcare*, 159 F.3d 142, 145-46 (3d Cir. 1998) (holding motion to remand action to state court was dispositive as such motion conclusively determines whether a federal forum is available to address the dispute).

[2] The Facts statement is taken from the pleadings and motion papers filed in this action.

remove the action to federal district court pursuant to 28 U.S.C. § 1441 based on diversity jurisdiction. On January 27, 2005, while the action was pending in New York Supreme Court, Plaintiffs filed a motion for summary judgment.

On July 31, 2005, Allied Holdings, Inc. ("the Debtor"), a holding company of which Defendant Allied and others are affiliates ("the Debtors"), filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code ("the bankruptcy proceeding") in United States Bankruptcy Court for the Northern District of Georgia ("the Bankruptcy Court"). On August 2, 2005, an Order Enforcing Sections 362 and 525 of the Bankruptcy Code ("the Code") was entered with regard to the bankruptcy proceeding, thereby enforcing the Code's automatic stay and anti-discrimination provisions with regard to the Debtors' bankruptcy estate, including staying, restraining and enjoining the continuation of any judicial proceedings or recovery on a claim against any Debtors that arose prior to the commencement of the bankruptcy proceeding.

On August 3, 2005, Defendants filed in New York Supreme Court a response in opposition to Plaintiffs' pending summary judgment motion (Defendants' Summary Judgment Response"). Defendants' Summary Judgment Response neither mentions the Debtors' recently commenced bankruptcy proceeding nor relies upon the automatic stay provisions of the Code.

On January 11, 2006, Plaintiffs moved in the bankruptcy proceeding to exclude the personal injury action from the automatic stay, arguing that Plaintiffs do not seek to recover damages, in the instant action, in excess of $ 2 million, which is the amount of liability insurance coverage per claim carried by Allied for the relevant period in which

the accident occurred. In particular, according to Defendants, between January 1, 2001 and February 28, 2003, Allied obtained automobile liability insurance through Kemper Insurance Companies ("Kemper").[3] The relevant insurance policy ("the Kemper policy"), provides for a $ 500,000 deductible per incident, and a per claim limit of $ 2 million. Allied paid Kemper $ 6.46 million for the insurance policy, of which Kemper retained $ 460,000 as premiums and administrative costs, and remitted the $ 6 million difference, referred to as "Loss Funds", to Haul Insurance Limited ("Haul"), for reinsurance coverage for Allied's deductibles should Allied fail to pay the deductible amount to a third-party liability claimant on an automobile claim. Haul retained the Loss Funds as collateral for letters of credit issued in favor of Kemper. Thus, if Allied failed to pay the deductible amount, Kemper would be required to pay the entire amount of a liability claim to a third-party automobile liability claimant, including Allied's deductible portion. Kemper could then seek reimbursement from Haul by drawing on the letters of credit issued by Haul, and Allied would then be ineligible for a return of such collateral from Kemper.

On February 22, 2006, Plaintiffs filed a Proof of Claim in the bankruptcy proceeding. On March 22, 2006, Plaintiffs and Allied executed a Consent Order Modifying Automatic Stay ("Stay Relief Order"),[4] granting the limited relief Plaintiffs sought from the automatic stay. In particular, the automatic stay was

> modified solely, and only to the extent necessary, to permit [Plaintiffs] to (a) continue their existing state court action against [Allied] in respect of those

---

[3] Copies of the insurance policies relevant to the instant action are not in the record; Plaintiffs, however, do not dispute Defendants' description of the insurance coverage applicable to Plaintiffs' claims.

[4] A copy of the Stay Relief Order is attached as Exhibit E to the Notice of Removal.

certain personal injury tort claims asserted by [Plaintiffs] against [Allied] set forth in the Motion (the "Claims") in order to proceed to final judgment upon, or settlement of, the Claims, and (b) attempt to recover any liquidated final judgment upon, or settlement of, the Claims, from available insurance policies of the Debtor, if any, related to the Claims. [Plaintiffs'] recovery, if any, against [Allied] shall be limited to the insurance policy proceeds, if any, under [Allied's] applicable insurance policies in relation to the Claims.  <u>Any such insurance policy proceeds received by [Plaintiffs] shall be in full and final settlement and satisfaction of the Claims.  Other than with respect to such insurance policy proceeds, [Plaintiffs] shall not be entitled to seek recovery upon the Claims from [Allied] or its estate</u> . . . .

Stay Relief Order ¶ 2 (bracketed text and underlining added).[5]

On April 21, 2006, Defendants filed a Notice of Removal (Doc. No. 1) ("Removal Notice"), thereby removing the personal injury action from New York Supreme Court to this court, asserting jurisdiction pursuant to 28 U.S.C. §§ 157, 1334 and 1425.  The Removal Notice is supported by attached exhibits A through E ("Defendants' Exh(s). ___"), the Index of Record (Doc. No. 2) ("Record Index"), attached to which are copies of all pleadings and papers filed in connection with the personal injury action in New York Supreme Court, and the Affidavit of David J. Sleight, Esq. (Doc. No. 3).  On May 22, 2006, Plaintiffs filed the instant motion to remand the personal injury action to New York Supreme Court (Doc. No. 4) ("Remand Motion").  The Remand Motion is supported by the attached Affidavit of Philip Celniker, Esq. ("Celniker Affidavit"), and Memorandum of Law ("Plaintiffs' Memorandum").  On June 23, 2006, Defendants filed a Memorandum opposing the motion to remand (Doc. No. 7) ("Defendants' Memorandum").  Plaintiffs filed not reply.  Oral argument was deemed unnecessary.

Based on the following, Plaintiffs' motion to remand the instant action to New

---

[5] The parties do not dispute that the Stay Relief Order became effective.

York Supreme Court is GRANTED.

**DISCUSSION**

Removal of an action filed in state court to federal court is generally governed by 28 U.S.C. § 1441 which provides for removal of any action over which, as filed, the district court would have original jurisdiction based on either the presence of a federal question or diversity of the parties' citizenship. 28 U.S.C. § 1441(b) ("§ 1441(b)"). Although the instant action, as filed, could have been removed pursuant to § 1441(b) based on diversity jurisdiction, it was not, and the one year in which to do so pursuant to 28 U.S.C. § 1446(b), has long elapsed. Rather, Defendants have removed the instant action pursuant to 28 U.S.C. § 1452(a) ("§ 1452(a)"), which, as relevant, provides for the removal of "any claim or cause of action in a civil action . . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." § 1452(a).

Specifically, 28 U.S.C. § 1334 ("§ 1334") provides, in pertinent part, that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." § 1334(b). The reference to cases arising under "title 11" is to proceedings commenced pursuant to the Code. An action is considered "related to" a bankruptcy proceeding if the outcome of the litigation "might have any 'conceivable effect' on the bankrupt estate," or has "'any significant connection with the bankrupt estate.'" *In re Cuyahoga Equipment Corp.*, 980 F.2d 110, 114 (2d Cir. 1992) (quoting *In re Turner*, 724 F.2d 338, 340-41 (2d Cir. 1983)).

Here, Defendants maintain the removal of Plaintiffs' personal injury action is proper because any recovery by Plaintiffs in the personal injury action could have an effect on Allied's bankruptcy estate given that Allied's insurance coverage was arranged in such a manner that Allied "prepaid the amount of losses projected to arise from Allied's automobile claims in that year." Removal Notice ¶ 12. Defendants maintain that because Allied retains a "partial risk of loss by virtue of certain deductibles" which "would have to be satisfied from assets of the bankruptcy estates," Defendants' Memorandum at 4, there is "a dollar impact upon the bankruptcy estates for any payout on account of a personal injury claim." Removal Notice ¶ 12. Defendants explain that Allied's insurance policy provides that "in the event Allied does not pay the applicable deductible on an Automobile Claim when found liable, Kemper will pay the entire amount of the claim to or on behalf of the third-party automobile liability claimant." Removal Notice ¶ 12. Defendants further speculate that should Kemper be required to pay to Plaintiffs the deductible for which Allied is responsible, "Kemper will <u>likely</u> seek reimbursement by drawing on the letters of credit caused to be issued by Haul." *Id*. ¶ 13 (underlining added). According to Defendants, because Allied has already prepaid the projected amount of coverage for Plaintiffs' automobile liability claims, Kemper, by drawing on a letter of credit issued by Haul, "may hurt [Allied's] ability to seek a return of Collateral from Kemper," thereby affecting the amount of funds available for distribution to creditors in the bankruptcy proceeding. *Id*. ¶¶ 14-15. The court, however, disagrees that Plaintiffs' personal injury action could have any conceivable effect on Allied's bankruptcy estate, subject to the pending bankruptcy proceeding.

In particular, the Code provides for a bankruptcy court to grant relief from the

automatic stay provision. 11 U.S.C. § 362(d). As such, should Plaintiffs eventually prevail in the personal injury action, the Stay Relief Order specifically limits Plaintiffs' recovery to the "insurance policy proceeds" which "shall be in full and final settlement and satisfaction of the Claims . . ." Stay Relief Order ¶ 2. Significantly, insurance proceeds do not include the amount of the insured's deductible. *In re McLean Industries, Inc.*, 121 B.R. 704, 707 (Bkrtcy. S.D.N.Y. 1990) (stating a claimant must assert a claim beyond the amount of the insured's deductible "in order to tap insurance proceeds."). The Stay Relief Order further provides that "[Plaintiffs] shall not be entitled to seek recovery upon the Claims <u>from</u> [Allied] <u>or its estate</u> . . . ." Stay Relief Order ¶ 2 (underlining added). Defendants do not dispute that the Stay Relief Order was enforceable against Plaintiffs in this action. As such, the Stay Relief Order would prevent Plaintiffs from collecting the amount of the deductible from Allied, assuming Plaintiffs obtain a judgment in this action. There is thus no merit to Defendants' assertion that Kemper, upon paying the deductible portion for which Allied is otherwise responsible, would likely seek reimbursement for such monies by drawing on the Letters of Credit issued by Haul, thereby impairing Allied's ability to seek a return of such collateral and, in turn, affecting the amount of the funds available to creditors of Allied's bankruptcy estate. Rather, because the plain language of the Stay Relief Order limits Plaintiffs' recovery to the "insurance policy proceeds," which do not include the insured's deductible portion, *In re McLellan*, *supra*, at 707, Plaintiffs would not be entitled to recover the deductible portion, nor would Kemper be required to pay Plaintiffs the deductible portion. As such, Kemper would not, as Defendants contend, be placed in a position whereby Kemper would be likely to seek to recover the

deductible amount by drawing on letters of credit issued by Haul, thereby jeopardizing any return of Allied's collateral to Allied's bankruptcy estate held by Haul as Loss Funds.

Further, 28 U.S.C. § 157 provides that

> Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

28 U.S.C. § 157(a). Accordingly, a Standing Order filed in this court on July 13, 1984 ("July 13, 1984 Standing Order") orders the referral to Bankruptcy Court for the Western District of New York of all cases and proceedings arising under Title 11 of the United States Code, or related to such cases or proceedings.[6] Bankruptcy courts have original jurisdiction over any matter considered a "core proceeding" as defined under 28 U.S.C. § 157(b)(2). In particular, "[a] proceeding's nature can be core "if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceeding, or (2) the proceeding directly affects a core bankruptcy function." *In re U.S. Lines, Inc.*, 197 F.3d 631, 637 (2d Cir. 1999) (citing cases). The filing in a bankruptcy proceeding of a creditor's proof of claim will generally convert such claim into a core proceeding, thereby bring the claim within the bankruptcy court's jurisdiction. *In re Millenium Seacarriers, Inc.*, 419 F.3d 83, 98 (2d Cir. 2005) (observing that parties who file proofs of claims in bankruptcy proceeding and thereafter actively litigate in bankruptcy court without contesting jurisdiction can transform a non-core proceeding into a core proceeding).

---

[6] "A bankruptcy court is a unit, or adjunct, of a federal district court." Scherer v. Carroll, 150 B.R. 549, 551 (Bkrtcy. D. Vt. 1993) (citing cases).

Nevertheless, personal injury action are specifically exempted from a bankruptcy court's jurisdiction pursuant to 28 U.S.C. § 157(b) which provides

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

28 U.S.C. § 157(b)(5) ("§ 157(b)(5)"). .

*See In re Johns-Mansville Corp.*, 45 B.R. 827, 829 (Bkrtcy. S.D.N.Y. 1984) (stating § 157(b)(5) "makes clear that trials to resolve such [personal injury or wrongful death] claims cannot be held in the bankruptcy court."). Personal injury and wrongful death claims have been exempted from core bankruptcy jurisdiction because, unlike parties to a contract with a debtor, personal injury claimants do not voluntarily associate themselves with the debtor. Roger S. Braugh, Jr., *Personal Injury and Wrongful Death Claims in Bankruptcy: The Case for Abstention*, 47 Baylor L. Rev. 151 (Winter 1995) (citing Collier on Bankruptcy ¶ 3.01[3][c] at 3-83 (Lawrence P. Knig Ed., 15th ed. 1994)). As such, § 157(b)(5) "merely sets forth the procedure by which the forum for trial shall be designated . . . . [t]hat forum <u>shall be the district court</u> in which the bankruptcy case is pending or in which the claim arose." *In re Johns-Mansville Corp.*, *supra*, at 829 (underlining added). Plaintiffs' personal injury thus could be litigated either in the Western District of New York, where the claim arose, or in the Northern District of Georgia, where the bankruptcy proceeding is pending, and such determination is reserved, pursuant to § 157(b)(5), to the Northern District of Georgia.

Before such a decision is made, however, the district court to which the personal injury action is removed can, in the exercise of its discretion, "abstain[ ]from hearing a

particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1).[7]  Assuming, *arguendo*, that an action has been properly removed pursuant to § 1452, a district court has discretion to abstain from hearing a particular proceeding arising under or related to a bankruptcy proceeding.  28 U.S.C. § 1334(c)(1)[8] ("§ 1334").  Specifically, "nothing in [§ 1334] prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for state law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.  28 U.S.C. § 1334(c)(1).

Twelve factors have been identified for consideration by courts when deciding whether to exercise discretionary abstention.  *See In re 610 W. 142 Owners Corp.*, 1999 WL 294995, * 3 (S.D.N.Y. May 11, 1999) (citing *In re Craft Architectural Metals Corp.*, 115 B.R. 423, 432 (E.D.N.Y. 1989)).  These twelve factors include

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention; (2) the extent to which state law issue predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional bases, if any, other than 29 U.S.C. § 1334, (5) the degree of relatedness or remoteness of the proceeding to

---

[7] The mandatory abstention provision, 28 U.S.C. § 1334(c)(2), which requires that the district court abstain from hearing "an action [which] could not have been commenced in a court of the United States absent jurisdiction under this section . . . if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction," does not apply in the instant action.  Specifically, as noted, Background and Facts, *supra*, at 2-3, the instant action could have been commenced in this court on the basis of diversity jurisdiction.

[8] Because the instant action could have been commenced in this court based on diversity jurisdiction, the mandatory abstention, 28 U.S.C. § 1334(c)(2), does not apply.  In particular, 28 U.S.C. § 1334(c)(2) provides for mandatory abstention where "[u]pon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11, but not arising under title 11 or arising in a case under title 11, <u>with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section</u>, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction."  (underlining added).

> the main bankruptcy case, (7), the substance rather than form of an asserted '"core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the court's] docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*In re 610 W. 142 Owners Corp.*, *supra*, at * 3 (citing *In re Craft*, *supra*, at 432) (bracketed text in original).

Courts have also, in the exercise of discretion, abstained from hearing proceedings related to bankruptcy proceedings for a variety of reasons including, *inter alia*, where the only issues pending for adjudication are matters of state law, the procedural posture of the action, and the extent of discovery and other proceedings occurring prior to the removal from state court.  See e.g., *Technology Outsource Solutions, LLC v. ENI Technology, Inc.*, 2003 WL 252141, *5 (W.D.N.Y. Jan. 23, 2004) (discretionary remand warranted from removed breach of contract issue where only issues pending for adjudication by state court were matters of state contract law and remand would not prevent bankruptcy court from addressing defendant company's claim that plaintiff purchaser had fraudulently induced defendant's sale of assets); *In re Durson Supermarkets, Inc.*, 170 B.R. 211, 215-16 (Bkrtcy. S.D.N.Y. 1994) (district court abstained from hearing state law fraud and breach of contract claims, asserted by debtor against party from whom debtor purchased business, for party's alleged overstatement of business assets and understatement of liabilities, where district court's jurisdiction over claims was based solely on debtor's bankruptcy filing and nothing in record suggested debtor's claims, which presented no issue of bankruptcy law, could not be timely adjudicated in state court); and *Scherer v. Carroll*, *supra*, at

552-53 (abstaining from hearing personal injury case removed from state court based on bankruptcy of defendant, because the personal injury action was a non-core proceeding for which no proof of claim had been filed in bankruptcy court, the personal injury claimant had requested jury trial and discovery had already commenced in the state court action). Similarly, in the instant case there are several reasons why the court should abstain from exercising jurisdiction in the instant action.

First, as discussed above, Discussion, *supra*, at 7-8, because the Stay Relief Order does not provide for Plaintiffs to recover any amount beyond the insurance proceeds, any effect of the personal injury action on the bankruptcy proceeding is, at best, remote. Second, the instant action is one based on state common law tort, *i.e.*, negligence, and, as such, will be resolved based on applicable state law. Third, the personal injury action was commenced on January 4, 2002, and was litigated in New York Supreme Court for more than 3 ½ years until August 2, 2005 when the Order Enforcing Sections 362 and 525 of the Code was entered with regard to Allied's bankruptcy proceeding, thereby enforcing the Code's automatic stay and anti-discrimination provisions as to Allied's bankruptcy estate. Fourth, discovery has been completed and a motion for summary judgment has been prepared and filed by Plaintiffs and responded to by Defendants, notably, on August 3, 2005, one day after the enforcement of the Code's automatic stay and anti-discrimination provisions. Fifth, Defendant Deal, the driver of the truck, is not a party to the bankruptcy proceeding. Finally, given that Defendants could have originally removed the personal injury action to this court based on diversity jurisdiction, but chose not to do so, the belated removal could be viewed as forum shopping. Accordingly, it is in the interests of both justice

and comity to abstain from entertaining the action, pursuant to 28 U.S.C. § 1334(c)(1), and to remand the action to New York Supreme Court, Erie County, pursuant to 28 U.S.C. § 1452(b).

## **CONCLUSION**

Based on the foregoing, Plaintiffs' motion to remand the instant action to New York Supreme Court (Doc. No. 4) is GRANTED.  The Clerk of the Court is directed to take all steps necessary to remand the action.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    February 15 , 2007
          Buffalo, New York